# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| PATENT GROUP, LLC, | § | |
| | § | |
| Relator, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:10-CV-235 |
| | § | |
| SUMMIT CHEMICAL COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**SUMMIT CHEMICAL COMPANY'S MOTION TO DISMISS UNDER RULES 12(B)(1)
& 12(B)(6), OR ALTERNATIVELY, TO TRANSFER VENUE,
AND MEMORANDUM OF LAW IN SUPPORT**

Robert P. Latham
Texas State Bar No. 11975500
Matt Acosta
Texas State Bar No. 24062577
**JACKSON WALKER L.L.P.**
901 Main Street, Suite 6000
Dallas, Texas  75202
(214) 953-6000
(214) 953-5822 - Fax
Email: blatham@jw.com
Email: macosta@jw.com

**ATTORNEYS FOR DEFENDANT
SUMMIT CHEMICAL COMPANY**

## <u>TABLE OF CONTENTS</u>

BACKGROUND AND INTRODUCTION ...............................................................................1

MOTION TO DISMISS UNDER RULE 12(b)(1)........................................................................3

    Constitutional Standing ...........................................................................................3

    Relator Has Failed to Demonstrate Constitutionally Required Standing ..........................4

MOTION TO DISMISS UNDER RULE 12(b)(6)........................................................................7

    Dismissal Under Rule 12(b)(6) ...................................................................................7

    Relator has Failed Sufficiently to Plead an Essential Element of Its Claim.......................8

    Relator Has Failed to Plead Sufficient Facts to Satisfy Rule 9(b) ..................................10

MOTION FOR § 1404(a) CONVENIENCE TRANSFER ...........................................................11

    Transfer Standard ....................................................................................................11

    The Cost of Attendance for Willing Witnesses............................................................12

    The Relative Ease of Access to Sources of Proof .........................................................13

    The Availability of Compulsory Process to Secure the Attendance of Witnesses............14

    Other Practical Problems ..........................................................................................14

    Administrative Difficulties Flowing From Court Congestion .........................................15

    The Local Interest in Having Localized Disputes Decided at Home ...............................15

    Other Public Factors ................................................................................................16

    The Convenience Factors Favor Transfer to the District of Maryland.............................16

CONCLUSION AND PRAYER ............................................................................................16

5860092v.6

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Advanced Cartridge Technologies, LLC v. Lexmark International, Inc.*,
   No. 8:10-cv-486, 2010 WL. 2640137 (M.D. Fla. June 30, 2010)...............................4, 10

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)...............................................................................................7

*Baker v. Putnal*,
   75 F.3d 190 (5th Cir. 1996)........................................................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................7, 9

*Brinkmeir v. Graco Children's Products, Inc.*,
   No. 09-262, 2010 WL. 545896 (D. Del. Feb. 16, 2010).................................................8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009).................................................................................11

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
   565 F.3d 200 (5th Cir.), cert. denied, 130 S. Ct. 199 (2009) .........................................10

*Florida Department of Insurance v. Chase Bank of Texas National Association*,
   274 F.3d 924 (5th Cir. 2001) .......................................................................................3

*Forest Group, Inc. v. Bon Tool Co.*,
   590 F.3d 1295 (Fed. Cir. 2009)....................................................................................2

*Fujitsu Ltd. v. Tellabs, Inc.*,
   639 F. Supp. 2d 761 (E.D. Tex. 2009)..................................................................12-16

*Gonzalez v. Kay*,
   577 F.3d 600 (5th Cir. 2009).......................................................................................7

*Juniper Networks v. Shipley*,
    No. C 09-0696, 2010 WL. 986809 (N.D. Cal. March 17, 2010) .....................................4

*Juniper Networks v. Shipley*,
   No. C 09-0696, 2009 WL. 1381873, at 4 (N.D. Cal. May 14, 2009)...............................10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................................3, 5

5860092v.6

*Maryland. In re Volkswagen of America, Inc.*,
   545 F.3d at 315.....................................................................................................16

*Pequignot v. Solo Cup Co.*,
   No. 1:07-cv-897, 2010 WL 2346649, at *6 (Fed. Cir. June 10, 2010) ....................1, 8, 9

*Simonian v. Cisco Systems, Inc.*,
   No. 10 C 1306, 2010 WL 2523211 (N.D. Ill. June 17, 2010)....................................4, 10

*Stauffer v. Brooks Bros., Inc.*
   615 F. Supp. 2d 248 (S.D.N.Y. 2009) .................................................................4, 5

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ..................................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..............................................................................................10

*U.S. ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009).................................................................................11

*U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*,
   417 F.3d 450 (5th Cir. 2005).................................................................................10

*United States ex rel. Thompson v.  Columbia/HCA Healthcare Corp.*,
   125 F.3d 899 (5th Cir.1997)..................................................................................10

*Vermont Agency of National Resources v. United States ex rel. Stevens*,
   529 U.S. 765 (2000) ...........................................................................................1, 4-6

*In re Genentech*,
   566 F.3d 1338 (Fed Cir. 2009)..............................................................................15

*In re TS Tech USA Corp*,
   551 F.3d 1315 (Fed. Cir. 2008) .............................................................................13

*In re Volkswagen AG*,
   371 F.3d 201, 203 (5th Cir. 2004).....................................................................12-13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304, 315 (5th Cir. 2008) .....................................................................12-16

*In re Volkswagen of Am. Inc.*,
   566 F.3d 134 (Fed. Cir. 2009) ...............................................................................14

5860092v.6

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175, 177 (5th Cir. 1997) ........................................................................10-11

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...............................................................................................3

*Whiddon v. Chase Home Finance*,
    666 F. Supp. 2d 681 (E.D. Tex. 2009) ...............................................................9, 10

## DOCKETED CASES

*Stauffer v. Brooks Brothers, Inc.*,
    Appeal Nos. 2009-1428, 2009-1430, 2009-1453 (Fed. Cir.) .............................................4

## FEDERAL STATUTES

28 U.S.C. § 1404(a) .......................................................................................... 1, 11, 12

31 U.S.C. § 3729 .................................................................................................4, 6

31 U.S.C. § 3730(b) ...............................................................................................7

35 U.S.C. § 287 ..................................................................................................2, 3

35 U.S.C. § 29 ...............................................................................................Passim

## FEDERAL RULES

Fed. R. Civ. P. 9(b) ..........................................................................................10, 11

Fed. R. Civ. P. 45(a)(2) ...........................................................................................14

Fed. R. Civ. P. 45(b)(2) ...........................................................................................14

5860092v.6

Defendant Summit Chemical Company ("Summit") moves to dismiss the complaint filed by relator Patent Group, LLC ("Relator" or "Patent Group") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Complaint fails to demonstrate or allege that Relator has suffered any injury sufficient to confer it with standing to file suit.  Moreover, the Complaint is devoid of any factual allegations supporting an essential element of Relator's claim—that Summit acted with an intent to deceive the public.  Without specific factual allegations relating to intent, the Complaint fails to meet the pleading standards of either Federal Rules of Civil Procedure 8(a) or 9(b).   Because of these deficiencies, the complaint should be dismissed for lack of jurisdiction or for failure to state a claim.  Alternatively, Summit requests a convenience transfer under 28 U.S.C. § 1404(a) to the District of Maryland, Baltimore Division, where the overwhelming majority of relevant evidence and witnesses are located.

## BACKGROUND AND INTRODUCTION

This is a "false marking" case arising from 35 U.S.C. § 292, which provides in part:

> (a) Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public . . . shall be fined not more than $500 for every such offense
>
> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

Section 292 creates a *qui tam* cause of action allowing a private individual to sue on behalf of the government.[1]   Additionally, the false marking statute is, by nature, a criminal statute that is punishable with a civil fine. *Pequignot v. Solo Cup Co.*, --- F.3d---, No. 1:07-cv-

---

[1] "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Vermont Agency of Nat'l Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 n. 1 (2000).  A brief history of *qui tam* actions, generally, can be found in the *Vermont Agency* opinion at pages 774-777.

897, 2010 WL 2346649, at *6 (Fed. Cir. June 10, 2010) (citing S. Rep. No. 82-1979, 1952 U.S.C.C.A.N. 2394, 2424 (1952)). On December 28, 2009, the Federal Circuit decided *Forest Group, Inc. v. Bon Tool Co.*, overruling century-old precedent, and interpreting § 292 to allow a $500 dollar fine per falsely-marked article rather than a single fine for continuous false marking. 590 F.3d 1295, 1301-04 (Fed. Cir. 2009).  As expected, this led to "'a new cottage industry' of false marking litigation by plaintiffs who have not suffered any direct harm." *Id.* at 1303.  This lawsuit represents one in a flurry of false marking lawsuits since the *Forest Group* decision.

On April 30, 2010, Relator filed the present suit alleging that Summit is in violation of § 292.  The Complaint offers little insight on Patent Group, save that it is "a limited liability company organized and existing under the laws of the State of Texas."  Complaint at ¶ 1. Summit is in the business of formulating, designing, and manufacturing a variety of environmentally responsible pesticide, herbicide, and agricultural products.  Declaration of Jonathan Cohen appended hereto as Exhibit A ("Cohen Decl.") at ¶ 3.  Summit is a Maryland corporation with its headquarters and sole manufacturing facility located in Baltimore, Maryland. *Id.* at ¶¶ 2, 6-8.  Summit employs approximately thirteen people, all but one[2] of whom both reside and work in and around the Baltimore area. *Id.* at ¶ 5.

Summit obtained U. S. Patent No. 4,631,857 (the "'857 Patent") and has been represented by outside patent and trademark counsel at all times from the filing of the patent application until the filing of this suit. *Id.* at ¶¶ 9-10.  When the patent was issued, Summit's patent counsel advised that, under the patent "marking" statute, 35 U.S.C. § 287, Summit was required to mark its patented products, or else risk the ability to effectively enforce the patent. *See id.* at ¶ 12.  On May 12, 2010, counsel advised Summit that the patent number should be removed from future

---

[2] Summit employs a sales manager who lives in Florida and who has no knowledge or information relevant to this suit.

**DEFENDANT'S MOTION TO DISMISS UNDER RULES 12(B)(1) & 12(B)(6), OR ALTERNATIVELY, TO TRANSFER VENUE, AND MEMORANDUM OF LAW IN SUPPORT - Page 2**

labels.  *Id.* at ¶ 13.   On the same date, Summit placed an order for new labels, and on or about

May 17, 2010 Summit received and began using the labels without a patent number or with the

patent number blacked out. *Id.* at ¶¶ 13-14.  Summit was served with this suit on May 22, 2010.

*Id.* at ¶ 15.

## MOTION TO DISMISS UNDER RULE 12(b)(1)

### *Constitutional Standing*

Though Relator may have a statutory right to bring a cause of action on behalf of the

United States under § 292, that does not excuse it from demonstrating its standing to bring suit.

"[S]tanding is a component of Article III's case or controversy requirement, and is jurisdictional

in nature." *Florida Dept. of Ins. v. Chase Bank of Texas Nat'l Ass'n*, 274 F.3d 924, 929 n.8 (5th

Cir. 2001), *cert. denied*, 535 U.S. 1097 (2002) (citing *Valley Forge Christian College v.*

*Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-76 (1982)).

Standing must exist for a suit to proceed.  *Id.*

"As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged

such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-

court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v.*

*Seldin*, 422 U.S. 490, 498-99 (1975) (emphasis in original).   For a party to establish

constitutional standing, it must demonstrate: (1) an injury in fact—an invasion of a legally

protected interest that is (a) concrete and particularized, and (b) actual or imminent; (2) a causal

connection between the injury and the conduct complained of; and (3) that the injury is likely to

be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

(1992). "If the plaintiff is not the party who sustained the concrete and particularized injury for

which a remedy is sought, and is not the assignee or designated representative of the injured

party, then it does not have standing." *Florida Dept. of Ins.*, 274 F.3d at 929.

**DEFENDANT'S MOTION TO DISMISS UNDER RULES 12(B)(1) & 12(B)(6), OR ALTERNATIVELY, TO
TRANSFER VENUE, AND MEMORANDUM OF LAW IN SUPPORT - Page 3**

In *Vermont Agency of Nat'l Resources v. United States ex rel. Stevens*, the Supreme Court decided that a relator could establish *qui tam* standing under the False Claims Act, 31 U.S.C. § 3729 ("FCA"), because the statute acted as a partial assignment of the government's cause of action to the relator.  529 U.S. 765, 774 & n. 4 (2000).  Liability lies under the  FCA for "[a]ny person" who, *inter alia*, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval."  Thus, the injury-in-fact in a *qui tam* action under the FCA is clear—the government has been the victim of a fraud.  The statute contains specific language that acts as a partial assignment of the government's claim to the relator.  *Id.* at 780.  While both the FCA and § 292 create *qui tam* rights, unlike the FCA *qui tam* statute, section 292 does not designate a relator as a representative of the Government and therefore Relator is required to show a particularized injury-in-fact in order to have constitutional standing to bring suit under § 292.

The Southern District of New York recently decided *Stauffer v. Brooks Bros., Inc.*, dismissing a relator's complaint under § 292 for lack of constitutional standing.  615 F. Supp.2d 248, 254 (S.D.N.Y. 2009).  That decision is currently on appeal before the Federal Circuit, with oral argument set for August 2010.  *See Stauffer v. Brooks Bros., Inc.*, Appeal Nos. 2009-1428, 2009-1430, 2009-1453 (Fed. Cir.).  While other district courts have confronted the issue,[3] Summit submits that *Stauffer* represents the most thorough and best reasoned analysis to date of the standing issue under § 292.

### Relator Has Failed to Demonstrate Constitutionally Required Standing

Relator has not pleaded, or otherwise demonstrated, how Summit's alleged false marking has injured the United States in a fashion that is "concrete and particularized" or "actual or

---

[3] *See, e.g., Advanced Cartridge Technologies, LLC v. Lexmark Int'l, Inc.*, No. 8:10-cv-486, 2010 WL 2640137, at *2 (M.D. Fla. June 30, 2010); *Simonian v. Cisco Systems, Inc.*, No. 10 C 1306, 2010 WL 2523211, at *2 (N.D. Ill.  June 17, 2010); *Juniper Networks v. Shipley*, No. C 09-0696, 2010 WL 986809, at *6 (N.D. Cal. March 17, 2010).

imminent." The Complaint alleges only that false marking may create "public deception," "competitive harm," or may "deter competition." Complaint at ¶ 23, 25. However, by their very nature, these alleged injuries are general, imperceptible, and cannot serve as the basis for constitutional standing. *See Lujan*, 504 U.S. at 565 (requiring plaintiff to establish an injured interest that was "perceptibly affected by the unlawful action in question").

The argument that a similar conclusory allegation of competitive harm could meet the standing requirements in a § 292 case was raised and rejected in *Stauffer*. In *Stauffer*, the complaint alleged that by marking its bow ties with an expired patent, Brooks Brothers had "wrongfully quelled competition." The district court held that the allegation was "insufficient to establish anything more than the sort of 'conjectural or hypothetical' harm that the Supreme Court instructs is insufficient" and that alleging that "some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendants' conduct, is purely speculative and plainly insufficient to support standing." 615 F. Supp.2d at 255 (quoting *Summers v. Earth Island Inst.*, 129 S.Ct. 1142, 1151-1152 (2009)); *Lujan*, 504 U.S. at 566.

Relator also alleges that it has been specifically injured by "incurring the cost and time associated with this enforcement." Complaint at ¶ 25. Again, this argument has been foreclosed by the Supreme Court's pronouncement that "[a]n interest unrelated to injury in fact is insufficient to give a plaintiff standing." *Vermont Agency*, 529 U.S. at 772. Indeed, if merely bringing a lawsuit was sufficient to confer standing, then standing would cease to be a substantive requirement at all. One "cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Moreover, Relator's characterization of itself as an agent of the government is insufficient to confer standing under § 292. Relator's complaint alleges that "[s]ection 292 . . . allows a litigant acting as a private attorney general to sue in *qui tam* for False Marking of a product, with one half of the recovery going to the United States." Complaint at p. 1-2. The Supreme Court has held that an "agent" of the government can assert an "injury to its sovereignty arising from violation of its laws (which suffices to support a criminal lawsuit by the Government)" for the purposes of establishing standing. *Vermont Agency*, 529 U.S. at 771.

However, the Court has also held that this analysis is precluded when the *qui tam* statute gives a relator an interest in the lawsuit itself and not simply a right to retain a fee out of the recovery. *Id.* at 772. This distinction is exemplified by the FCA, which specifically includes provisions that give the government the right to intervene and "take over" prosecution of a *qui tam* action filed on its behalf, but gives the relator the right "to continue as a party to the action." *Id.* at 772 (citing 31 U.S.C. § 3730(b)). Citing those provision, the *Vermont Agency* Court reasoned that because a relator has a personal interest in the lawsuit itself, and not simply an interest derived from an agency relationship with the government, it must establish its own standing. *Id.*

In stark contrast with the FCA discussed in *Vermont Agency*, Congress has not included any specific provisions in § 292 allowing the government to intervene, make any strategic decisions, or otherwise involve itself in a false marking suit. By the terms of § 292, the government has no interest in the lawsuit besides its potential one-half recovery. Thus, Relator has the *sole* interest in the lawsuit itself, and the statute is more properly classified as *endowing the government* with a one-half interest in a purely private suit. As a result, Relator may not rely on the governmental interest in maintaining its sovereignty to establish standing. Nothing in

§ 292 establishes an agency relationship between Relator and the government for the purposes of constitutional standing. *Cf.* 31 U.S.C. § 3730(b) (specifically establishing a *qui tam* cause of action on behalf of the United States "in whose name" the relator is bringing the action). Thus, Relator may not rely on the government's general interest in maintaining its sovereignty, or indeed, any governmental interest to establish its standing.

Because Relator's complaint fails to identify a concrete and particularized injury that is causally connected to the complained-of conduct, Relator lacks standing to bring a suit under § 292 and the complaint should be dismissed for lack of subject matter jurisdiction.

## MOTION TO DISMISS UNDER RULE 12(b)(6)

### *Dismissal Under Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) is used to test the sufficiency of pleadings under Rule 8(a). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a) demands that a complaint allege sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. For a claim to have facial plausibility, a plaintiff is required to plead facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), *cert. denied*, 130 S.Ct. 1505 (2010). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id.* (internal quotations omitted). In determining whether to dismiss under Rule 12(b)(6), courts accept all well-pleaded facts contained in the plaintiff's complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

### *Relator has Failed Sufficiently to Plead an Essential Element of Its Claim*

The Federal Circuit recently decided *Pequignot v. Solo Cup Co.*, reaffirming that "intent to deceive the public" is an essential element to a claim under § 292.  --- F.3d---, 2010 WL 2346649, at *6 (Fed. Cir. June 10, 2010).  The defendant in *Pequignot* was a plastic cup manufacturer who was sued under the false marking statute for continuing to mark its products with several patent numbers after the patents had expired. *Id.* at *1.  The defendant had obtained the opinion of outside counsel in adopting a policy to phase out the mark as it replaced its expensive molding equipment in the usual course of business.  *Id.* at *2.  While the Court suggested that a false statement coupled with knowledge of the falsity created a weak inference of deceptive intent, the court ultimately concluded that good faith reliance on advice of counsel is a full defense to liability under § 292.  *Id.* at *7.  The defendant was, therefore, free to pursue its adopted policy "phasing out" the mark.

Similar to *Pequignot*, this case involves a sole expired patent; however, Relator's complaint fails to create even an inference of deceptive intent.  The entire complaint has only three paragraphs that, even arguably, contain factual allegations to support an assertion of deceptive intent.  *See* Complaint at ¶¶ 16-17, 19.  In those paragraphs, Relator alleges that Summit "is a sophisticated company" that "has many decades of experience applying for, obtaining, maintaining, and litigating patents." Complaint at ¶ 17.  Relator then declares that "[u]pon information and belief" Summit (or its patent counsel) "received notice that the '857 patent would expire" in 2003 and that Summit is "no longer paying maintenance fees" on the '857 patent." Complaint at ¶¶ 17, 19.

Under the controlling law, these statements are insufficient to create even an inference of intent to deceive the public. *See, e.g., Brinkmeir v. Graco Children's Products, Inc.*, No. 09-262, 2010 WL 545896, at *4-5 (D. Del. Feb. 16, 2010) (holding conclusory allegations of knowledge

**DEFENDANT'S MOTION TO DISMISS UNDER RULES 12(B)(1) & 12(B)(6), OR ALTERNATIVELY, TO TRANSFER VENUE, AND MEMORANDUM OF LAW IN SUPPORT - Page 8**

5860092v.6

of patent expiration insufficient to meet the *Twombly* pleading standard for a claim under §
292). The "bar for proving deceptive intent [] is particularly high, given that the false marking
statute is a criminal one" and "[b]ecause the statute requires that the false marker act 'for the
purpose of deceiving the public,' a purpose of deceit, rather than simply knowledge that a
statement is false, is required." *Pequignot*, 2010 WL 2346649, at *6. Even if taken as true, the
statements in Relator's complaint allege only that Summit owned a patent that expired, marked
its products with its patent number, and received notice of the expiration of the patent (perhaps
through counsel). These facts, taken together, do not create any inference that Summit formed a
specific intent to deceive anyone. For instance, the complaint does not allege when Summit
received notice of expiration or that the decision to continue marking was not reasonably based
on the advice of counsel.

This last omission is particularly instructive. The complaint recognizes that Relator
employs and relies upon a patent counsel who may have received notice of expiration on behalf
of Summit. *See* Complaint at ¶¶ 17-18. Thus, rather than showing Summit's deceptive intent,
the Complaint creates an inference that the decision to mark was, in fact, based on the advice of
counsel. Considering that such an inference creates a full defense to a claim under § 292,
Relator's complaint should be dismissed because it contains facts suggesting that relief is barred.
*Pequignot*, 2010 WL 2346649, at *7 (holding that reliance on advice of counsel is a defense to a
false marking claim); *Whiddon v. Chase Home Fin.*, 666 F. Supp.2d 681, 686 (E.D. Tex. 2009)
("where facts alleged in plaintiff's pleadings make clear that a claim is barred, dismissal under
Rule 12(b)(6) may be granted."). Without any additional allegations showing that Summit
ignored the advice of its patent counsel, or its reliance on that advice was unreasonable, Relator's
allegations fail to state a plausible claim under § 292. *See Whiddon*, 666 F. Supp.2d at 686.

The complaint does not provide sufficient facts to plausibly allege that Summit acted with an intent to deceive the public. Thus, the complaint fails to meet the threshold pleading standard of Rule 8(a) and should be dismissed for failure to state a claim.

### Relator Has Failed to Plead Sufficient Facts to Satisfy Rule 9(b)

The essence of a claim under § 292 is the allegation that a defendant has committed a fraud upon the public. Thus, courts considering the issue have overwhelmingly held that false marking claims are subject to the strict pleading requirements of Federal Rule of Civil Procedure 9(b). *See, e.g., Advanced Cartridge Technologies, LLC v. Lexmark Int'l, Inc.*, 8:10-cv-486, 2010 WL 2640137, at *1-2 (M.D. Fla. June 30, 2010) (dismissing a false marking claim for failure to comply with Rule 9(b)); *Juniper Networks v. Shipley*, No. C09-0696, 2009 WL 1381873, at *4 (N.D. Cal. May 14, 2009) ("The false marking statute is a fraud-based claim, which is subject to the pleading requirements of [Rule 9(b)]"); *Simonian v. Cisco Systems, Inc.*, 10 C 1306, 2010 WL 2523211, at *2-4 (N.D. Ill. June 17, 2010) (dismissing a false marking claim for failure sufficiently to plead deceptive intent under Rule 9(b)).

Rule 9(b) creates a higher pleading standard for plaintiffs alleging causes of action relating to fraud. *See* Fed. R. Civ. P. 9(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005); *Whiddon*, 666 F. Supp.2d at 690. The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir.), *cert. denied*, 130 S. Ct. 199 (2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). In short, a plaintiff is required to plead, at the very least, the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Thompson v.*

*Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997) (quoting *WMX Techs., Inc.*, 112 F.3d at 179); *accord Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327-28 (Fed. Cir. 2009). "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009).

As discussed above, the Complaint does not contain any facts concerning the alleged fraud except for a mere recitation that "upon information and belief . . . the false marking was done with the intent to deceive the public . . . ." "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330.

Again, Relator has not pleaded any facts that reasonably lead to the conclusion that Summit intended to deceive the public. The complaint does not specify who was involved in the decision to deceive the public, when or where that decision was made, or how Summit transformed its desire to protect its patent rights by marking its products to an intent to defraud the public at large. In short, merely alleging the existence of a product marked with an expired patent number is insufficient to satisfy Rule 9(b). *See Exergen*, 575 F.3d at 1331 (explaining that Rule 9(b) requires facts that, if true, show a "deliberate decision" to deceive). Thus, the Complaint should be dismissed for the additional reason that it fails to satisfy the requirements of Rule 9(b).

## MOTION FOR § 1404(a) CONVENIENCE TRANSFER

### *Transfer Standard*

In the alternative, Summit requests a convenience transfer under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The first inquiry when analyzing a case's eligibility for 1404(a) transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.'" *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp.2d 761, 765 (E.D. Tex. 2009) (Davis, J.) (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).

Once the threshold inquiry is met, courts then analyze both public and private factors to determine whether convenience transfer is appropriate. *Id.* The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* Further, "[t]he plaintiff's choice of venue is not a factor in [the transfer] analysis," but rather "contributes to the defendant's burden in proving that the transferee venue is 'clearly more convenient' than the transferor venue." *Id.* (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). Here there is no question that Relator could have filed this action in the District of Maryland where Summit is both incorporated and has its principal place of business. Ex. A, Cohen Decl. at ¶ 2. The threshold inquiry satisfied, analysis of the public and private factors is appropriate.

### The Cost of Attendance for Willing Witnesses

The Fifth Circuit has adopted a "100 mile rule" to guide the analysis of this factor. *Fujitsu*, 639 F. Supp. 2d at 765 (citing *Volkswagen AG*, 371 F.3d at 204-205). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is

more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d at 204-205. This Court has interpreted the rule to "favor[] transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue. *Fujitsu*, 639 F. Supp.2d at 765  (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 317; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008)).

The Eastern District of Texas and the District of Maryland are clearly more than 100 miles apart.   All of the potential witnesses relevant to both the Relator's claims and Summit's potential defenses reside in Maryland—specifically in and around the Baltimore area. *See* Ex. A, Cohen Decl. at ¶¶ 5-6.  If this case proceeds in Tyler, then all of these witnesses would be required to travel the approximately 1,300 miles away from their homes to appear at trial.

In contrast, Relator has no connection with this case besides the fact that it filed suit.[4] The fact that Relator exists within the Eastern District of Texas is entirely irrelevant to the transfer analysis.  Relator employs no relevant witnesses and has no relevant information to contribute to any part of these proceedings.  Thus, this factor strongly favors transfer. *Fujitsu*, 639 F. Supp. 2d at 765.

### The Relative Ease of Access to Sources of Proof

This factor considers the physical location of all relevant evidence regardless of whether relevant documents are in electronic or printed form. *Id.*  All documents relevant to the issues in this suit—i.e. whether Summit formed the alleged intent to deceive the public—are located at Summit's facilities in Maryland.  Ex. A, Cohen Decl. at ¶¶ 6-8.  Because Relator is entirely divorced from the allegations in the Complaint, it cannot possibly have any evidence relevant to

---

[4] It should be noted that the alleged "true" party in interest in a *qui tam* action is the United States Government, which has its headquarters in Washington, D.C., approximately 40 miles away from Baltimore, Maryland.

the substantive issues in this suit.  Because all of the evidence and documentation relevant to this suit are located in Maryland, this factor strongly favors transfer.

### The Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor "will weigh the heaviest in favor of transfer when a transferee venue is said to have 'absolute subpoena power'" *Fujitsu*, 639 F. Supp.2d at 767-68 (citing *In re Volkswagen of Am., Inc.*, 545 F.3d at 316).  "'Absolute subpoena power' is simply the concept that all relevant and material third-party witnesses reside within the subpoena power of a particular court." *Id.*

The District of Maryland has absolute subpoena power in this case.  All potential non-party witnesses reside in Maryland.  *See* Ex. A, Cohen Decl. at ¶ 11.  Federal Rule of Civil Procedure 45(b)(2)(A) authorizes service of a subpoena anywhere within the district of the issuing court.  By contrast, this Court does not have the ability to subpoena third-party witnesses residing in Maryland to secure their attendance at trial.  *See* Fed. R. Civ. P. 45(a)(2), 45(b)(2). Thus, this factor also strongly favors transfer.

### Other Practical Problems

This factor focuses on problems that are "rationally based on judicial economy." *Fujitsu*, 639 F. Supp.2d at 768 (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351-52 (Fed. Cir. 2009)).  Relator currently has eighteen separate "false marking" cases pending before this court. All of the cases were filed in April 2010 within 16 days of each other.  Relator may suggest that judicial economy requires that these cases are all tried within this district.

To the contrary, the separate cases have no common issues besides the fact that they all request relief under § 292.  The cases all allege that their respective defendants have marked articles with expired patent numbers.  Even assuming, for the moment, that is true, then the central issue in each case will be the deceptive intent of each of the respective defendants.  The resolution of that issue will require consideration of entirely different evidence particular to each

case.  There is no judicial advantage gained by collecting these cases in a single court.  Even if there were, it would not be great enough to outweigh the convenience gained by transferring this case to Maryland.  This factor is, at best, neutral.

### *Administrative Difficulties Flowing From Court Congestion*

The speed in which a case can come to trial within a particular venue is a factor in the transfer analysis.  *Fujitsu*, 639 F. Supp. 2d at 768-69 (citing *In re Genentech*, 566 F.3d 1338, 1347).  For 2009, the median time to trial in the Eastern District of Texas was 25 months.  http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2009.pl (last visited July 12, 2010).  For the same period, the median time to trial in Maryland was 26.4 months.  http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2009.pl (last visited July 12, 2010).  The approximately one month difference in median trial time between the venues is not so great as to affect the transfer analysis.  This factor is neutral.

### *The Local Interest in Having Localized Disputes Decided at Home*

"[T]his factor analyzes the 'factual connection' that a case has with both the transferee and transferor venues." *Fujitsu*, 639 F. Supp.2d at 769 (citing *In re Volkswagen AG*, 371 F.3d at 206). "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Fujitsu*, 639 F. Supp.2d at 769 (citing *In re Volkswagen AG*, 371 F.3d at 206).

Summit sells its products throughout the nation, but it has deep and substantial roots in Maryland.  While Relator may argue that the mere sale of allegedly falsely marked products within the Eastern District of Texas creates a localized interest, "local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests." *Fujitsu*, 639 F. Supp.2d at 769 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d at 318).  The overwhelmingly local interest in this dispute lies in Baltimore where

Defendant faces "potential damages, interruption of business, and [other] expenses as a result of this litigation." *Id.* Thus, this factor greatly favors transfer.

***Other Public Factors***

Neither forum has an advantage in its respective ability to interpret and apply the federal law governing this suit. Furthermore, there are no potential conflict of law issues inherent in this litigation. Thus, the remainder of the public transfer factors are neutral.

***The Convenience Factors Favor Transfer to the District of Maryland***

This suit has an overwhelming connection to the District of Maryland and no rational connection with the Eastern District of Texas. All public factors favor transfer, and the private factors are either neutral or also favor transfer. Relator's choice of forum cannot, and should not, outweigh the clear conveniences of trial in the District of Maryland. *In re Volkswagen of Am., Inc.*, 545 F.3d at 315. Consequentially, this case should be transferred to the District of Maryland, Baltimore Division.

## CONCLUSION AND PRAYER

For the foregoing reasons Summit respectfully requests that the Court dismiss Relator's complaint for lack of subject matter jurisdiction or for failure to state a claim for which relief can be granted. In the alternative, Summit requests that this case be transferred, for convenience, to the District of Maryland, Baltimore Division.

Respectfully submitted,

/s/ Matt Acosta
Robert P. Latham
Texas State Bar No. 11975500
Matt Acosta
Texas State Bar No. 24062577
**JACKSON WALKER L.L.P.**

901 Main Street, Suite 6000
Dallas, Texas  75202
(214) 953-6109
(214) 953-5822 - Fax
Email: blatham@jw.com
Email: macosta@jw.com

**ATTORNEYS FOR DEFENDANT**
**SUMMIT CHEMICAL COMPANY.**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred on July 13, 2010, with Kenneth Good, one of the attorneys for Relator, regarding the merits of the foregoing Motion to Transfer, and he does not consent to the relief therein requested.  It is therefore presented to the Court for determination.

/s/ Matt Acosta
Matt Acosta

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 14th day of July, 2010.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/ Matt Acosta
Matt Acosta