**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| PATENT GROUP, LLC, | § | |
| | § | |
| Relator, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:10-CV-235 |
| | § | |
| SUMMIT CHEMICAL COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**SUMMIT CHEMICAL COMPANY'S RENEWED MOTION TO DISMISS UNDER RULES 12(B)(1) & 12(B)(6) AND MEMORANDUM OF LAW IN SUPPORT**

DATED: September 15, 2010

Robert P. Latham
Texas State Bar No. 11975500
Matt Acosta
Texas State Bar No. 24062577
**JACKSON WALKER L.L.P.**
901 Main Street, Suite 6000
Dallas, Texas  75202
(214) 953-6000
(214) 953-5822 - Fax
Email: blatham@jw.com
Email: macosta@jw.com

**ATTORNEYS FOR DEFENDANT
SUMMIT CHEMICAL COMPANY**

Defendant Summit Chemical Company ("Summit") renews its motions to dismiss the First Amended Complaint filed by Relator Patent Group, LLC ("Relator" or "Patent Group") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  After having the benefit of Summit's motion identifying the deficiencies in Relator's original complaint, Relator's Amended Complaint again fails to meet the pleading standards of both Rules 8(a) and 9(b).  The "facts" as pled by Relator, allegedly leading to an inference that Summit acted with an intention of deceiving the public, cannot withstand any logical scrutiny.

Relator may not merely point to a marked product and an expired patent to allege an intention to deceive.  Instead, Relator is required to show some fact that independently supports that essential element of its cause of action.  Without specific factual allegations relating to intent, the Amended Complaint again fails to meet the pleading standards of either Federal Rules of Civil Procedure 8(a) or 9(b).

Moreover, Relator lacks standing to pursue a claim for false marking.  The Federal Circuit recently ruled that Congress intended the false marking statute, 35 U.S.C. § 292, to act as a statutory assignment of the government's cause of action to "any person," but left open the question of whether the assignment was a constitutional exercise of Congressional authority.  In fact, because the statute fails to grant the Executive Branch the right to maintain "sufficient control" over the enforcement of the statute, § 292 violates the "Take Care" clause of article II, section 3 of the U.S. Constitution.  As a result, any basis for standing derived from the statute is void.

Relator has also failed to plead a constitutionally sufficient basis for its individual standing because it has failed to allege any concrete or particularized injury-in-fact.  As a result

of these deficiencies, this case should be dismissed for lack of jurisdiction or for failure to state a claim.

## BACKGROUND AND INTRODUCTION

This is a "false marking" case arising from 35 U.S.C. § 292, which provides in part:

> (a) Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public . . . shall be fined not more than $500 for every such offense
>
> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

Section 292 creates a *qui tam* cause of action allowing a private individual to sue on behalf of the government.[1]   Additionally, the false marking statute is, by nature, a criminal statute that is punishable with a civil fine. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010) (citing S. Rep. No. 82-1979, 1952 U.S.C.C.A.N. 2394, 2424 (1952)).   On December 28, 2009, the Federal Circuit decided *Forest Group, Inc. v. Bon Tool Co.*, in which the court, overruling century-old precedent, interpreted § 292 to allow up to a $500 dollar fine per falsely-marked article rather than a single fine for continuous false marking.   590 F.3d 1295, 1301-04 (Fed. Cir. 2009).   As expected, this led to "'a new cottage industry' of false marking litigation by plaintiffs who have not suffered any direct harm."   *Id.* at 1303.   This lawsuit represents one in a flurry of false marking lawsuits since the *Bon Tool* decision.[2]

---

[1] "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Vermont Agency of Nat'l Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 n. 1 (2000).  A brief history of *qui tam* actions, generally, can be found in the *Vermont Agency* opinion at pages 774-777.

[2] As of September 13, 2010 Relator has filed 64 separate false-marking cases in this district alone.

On July 29, 2010, in response to Summit's original motions to dismiss, Relator filed its First Amended Complaint alleging that Summit violated § 292.  The Amended Complaint offers little insight on Patent Group, save that it is "a limited liability company organized and existing under the laws of the State of Texas."  Amended Complaint at ¶ 1.   Summit is in the business of formulating, designing, and manufacturing a variety of environmentally responsible pesticide, herbicide, and agricultural products.  Declaration of Jonathan Cohen appended hereto as Exhibit A ("Cohen Decl.") at ¶ 3.

Summit obtained U. S. Patent No. 4,631,857 (the "'857 Patent") and has been represented by outside patent and trademark counsel at all times from the filing of the patent application until the filing of this suit.  *Id.* at ¶¶ 9-10.   When the patent was issued, Summit's patent counsel advised that, under the patent "marking" statute, 35 U.S.C. § 287, Summit was required to mark its patented products, or else risk the ability to effectively enforce the patent.  *See id.* at ¶ 12.  On May 12, 2010, counsel advised Summit that the patent number should be removed from future labels.   *Id.* at ¶ 13.    On the same date, Summit placed an order for new labels, and on or about May 17, 2010 Summit received and began using the labels without a patent number or with the patent number blacked out. *Id.* at ¶¶ 13-14.  Summit was served with this suit on May 22, 2010. *Id.* at ¶ 15.    At all times, Summit has relied on the advice of counsel in order to both protect its patent rights and otherwise comply with relevant law.

## MOTION TO DISMISS UNDER RULE 12(b)(6)

### Dismissal Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) is used to test the sufficiency of pleadings under Rule 8(a).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8(a) demands that a complaint allege sufficient facts to  "'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. For a claim to have facial plausibility, a plaintiff is required to plead facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), *cert. denied*, 130 S.Ct. 1505 (2010). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (internal quotations omitted). In determining whether to dismiss under Rule 12(b)(6), courts accept all well-pleaded facts contained in the plaintiff's complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

### Relator has Failed to Sufficiently Plead an Essential Element of Its Claim

In *Pequignot v. Solo Cup Co.*, the Federal Circuit reaffirmed that "intent to deceive the public" is an essential element to a claim under § 292.  608 F.3d at 1362-63. The defendant in *Pequignot* was a plastic cup manufacturer who was sued under the false marking statute for continuing to mark its products with several patent numbers after the patents had expired. *Id.* at 1358. The defendant had obtained the opinion of outside counsel in adopting a policy to phase out the mark as it replaced its expensive molding equipment in the usual course of business. *Id.* at 1359. While the Court suggested that a false statement coupled with knowledge of the falsity created a weak inference of deceptive intent, the court ultimately concluded that good faith reliance on advice of counsel precluded liability under § 292. *Id.* at 1364. The defendant was, therefore, free to pursue its adopted policy of "phasing out" the mark.

Similar to *Pequignot*, this case involves a sole expired patent; however, Relator's Amended Complaint fails to create even an inference of deceptive intent. The entire complaint has only three paragraphs that, even arguably, contain factual allegations on the issue of deceptive intent. *See* Amended Complaint at ¶¶ 18, 25, 26. In those paragraphs, Relator alleges that Summit "is a sophisticated company" that "has many decades of experience applying for, obtaining, maintaining, and litigating patents." Amended Complaint at ¶ 18. Relator then declares that "[e]ach offense of false marking caused by Defendant has and continues to deceive the public" and that "Defendant could have no reasonable belief that it was proper to mark and advertise products with the expired '857 patent number, and the false marking was done with intent to deceive the public . . . ." Amended Complaint at ¶¶ 25-26.

Under the controlling law, these statements are insufficient to create even an inference of intent to deceive the public. *See, e.g.*, *Brinkmeir v. Graco Children's Products, Inc.*, No. 09-262, 2010 WL 545896, at *4-5 (D. Del. Feb. 16, 2010) (holding conclusory allegations of knowledge of patent expiration insufficient to meet the *Twombly* pleading standard for a claim under § 292). The "bar for proving deceptive intent . . . is particularly high, given that the false marking statute is a criminal one" and "[b]ecause the statute requires that the false marker act 'for the purpose of deceiving the public,' a purpose of deceit, rather than simply knowledge that a statement is false, is required." *Pequignot*, 608 F.3d at 1363. Even if taken as true, the statements in Relator's Amended Complaint allege only that Summit owned a patent that expired, marked its products with its patent number, and received notice of the expiration of the patent (perhaps through counsel). These facts, taken together, do not create any inference that Summit formed a specific intent to deceive anyone.

For instance, the Amended Complaint recognizes that Relator employs and relies upon a patent counsel who may have received notice of expiration on behalf of Summit. *See* Amended Complaint at ¶¶ 19-20. Thus, rather than showing Summit's deceptive intent, the Amended Complaint creates an inference that the decision to mark was, in fact, based on the advice of counsel. Considering that such an inference creates a full defense to a claim under § 292, Relator's Amended Complaint should be dismissed because it contains facts suggesting that relief is barred. *Pequignot*, 608 F.3d at 1364 (holding that reliance on advice of counsel "can negate the inference of a purpose of deceiving the public"); *Whiddon v. Chase Home Fin.*, 666 F. Supp.2d 681, 686 (E.D. Tex. 2009) ("where facts alleged in plaintiff's pleadings make clear that a claim is barred, dismissal under Rule 12(b)(6) may be granted.").

The Amended Complaint does not provide sufficient facts to plausibly allege that Summit acted with an intent to deceive the public. Thus, the Amended Complaint fails to meet the threshold pleading standard of Rule 8(a) and should be dismissed for failure to state a claim.

## Relator Has Failed to Plead Sufficient Facts to Satisfy Rule 9(b)

The essence of a claim under § 292 is the allegation that a defendant has committed a fraud upon the public. Thus, courts considering the issue have overwhelmingly held that false marking claims are subject to the strict pleading requirements of Federal Rule of Civil Procedure 9(b). *See, e.g., Advanced Cartridge Technologies, LLC v. Lexmark Int'l, Inc.*, 8:10-cv-486, 2010 WL 2640137, at *1-2 (M.D. Fla. June 30, 2010) (dismissing a false marking claim for failure to comply with Rule 9(b)); *Juniper Networks v. Shipley*, No. C09-0696, 2009 WL 1381873, at *4 (N.D. Cal. May 14, 2009) ("The false marking statute is a fraud-based claim, which is subject to the pleading requirements of [Rule 9(b)]"); *Simonian v. Cisco Systems, Inc.*, 10 C 1306, 2010

WL 2523211, at *2-4 (N.D. Ill. June 17, 2010) (dismissing a false marking claim for failure sufficiently to plead deceptive intent under Rule 9(b)).

Rule 9(b) creates a higher pleading standard for plaintiffs alleging causes of action relating to fraud. *See* Fed. R. Civ. P. 9(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005); *Whiddon*, 666 F. Supp.2d at 690.  The Fifth Circuit  "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir.), *cert. denied*, 130 S. Ct. 199 (2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).  In short, a plaintiff is required to plead, at the very least, the "who, what, when, where, and how" of the alleged fraud.  *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997) (quoting *WMX Techs., Inc.*, 112 F.3d at 179); *accord Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327-28 (Fed. Cir. 2009). "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009).

As discussed above, the Amended Complaint does not contain any facts concerning the alleged fraud except for a mere recitation that Summit "could have no reasonable belief that it was proper to mark and advertise products with the expired '857 patent number, and the false marking was done with the intent to deceive the public . . . ."  Amended Complaint at ¶ 26.

This bare recitation of an element is insufficient to meet the strict pleading standards of Rule 9(b).  Relator has still not pleaded any facts that reasonably lead to the conclusion that

Summit intended to deceive the public. The Amended Complaint does not specify who was involved in the decision to deceive the public, when or where that decision was made, or how Summit transformed its desire to protect its patent rights by marking its products to an intent to defraud the public at large. In short, merely alleging the existence of a product marked with an expired patent number is insufficient to satisfy Rule 9(b), especially when the Amended Complaint makes reference to Summit's counsel. *See Exergen*, 575 F.3d at 1331 (explaining that Rule 9(b) requires facts that, if true, show a "deliberate decision" to deceive). Thus, the Amended Complaint should be dismissed for the additional reason that it fails to satisfy the requirements of Rule 9(b).

## MOTION TO DISMISS UNDER RULE 12(b)(1)

### Constitutional Standing

Before this case can proceed, Relator must demonstrate its constitutional standing to bring suit. "[S]tanding is a component of Article III's case or controversy requirement, and is jurisdictional in nature." *Florida Dept. of Ins. v. Chase Bank of Texas Nat'l Ass'n*, 274 F.3d 924, 929 n.8 (5th Cir. 2001), *cert. denied*, 535 U.S. 1097 (2002) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-76 (1982)). Standing must exist for a suit to proceed. *Id.*

For a party to establish constitutional standing, it must demonstrate: (1) an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "If the plaintiff is not the party who sustained the concrete and particularized injury for which a remedy is sought, and is not the assignee or

designated representative of the injured party, then it does not have standing." *Florida Dept. of Ins.*, 274 F.3d at 929.

In *Vermont Agency of Nat'l Resources v. United States ex rel. Stevens*, the Supreme Court decided that a relator could establish *qui tam* standing under the False Claims Act, 31 U.S.C. § 3729 ("FCA"), because the statute acted as a partial assignment of the government's cause of action to the relator.  529 U.S. 765, 774 & n. 4 (2000).  Liability lies under the FCA for "[a]ny person" who, *inter alia*, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval."  Furthermore, and as explained more thoroughly below, the FCA provides a lengthy and detailed scheme allowing the government to assume control of any lawsuit filed under its provisions.  31 U.S.C. § 3730(b)(2).  In contrast, the language creating a *qui tam* cause of action in § 292 consists of a single sentence, relating only that "[a]ny person may sue for the [false marking] penalty, in which event one-half shall go to the person suing and the other to the use of the United States."  35 U.S.C. § 292(b).

## Stauffer v. Brooks Bros., Inc.

On August 31, 2010 the Federal Circuit decided *Stauffer v. Brooks Bros.*, Inc. holding that, like the FCA, Relators under § 292 could establish constitutional standing because the statute acted as an assignment to "any person" of a cause of action accruing to the federal government. --- F.3d ----, 2010 WL 3397419 at *4 (Fed. Cir. August 31, 2010).  The *Stauffer* court explained that, to establish an injury-in-fact, a § 292 relator could rely on the government's inherent injury stemming from the alleged violation of its laws.  *Id.*  In other words, "[b]ecause the government would have standing to enforce its own law, [a § 292 relator], as the government's assignee, also has standing to enforce section 292."  *Id.*

However, given its interpretation of § 292, the *Stauffer* court expressly reserved the question of whether the statute violated the "take Care" clause of Article II, § 3 of the United States Constitution. *Id.* at *5. That question is squarely presented here. Given that *Stauffer* has interpreted § 292 as a Congressional assignment of a governmental cause of action to private individuals, further scrutiny of the statute reveals that, unlike the FCA, the government has not maintained "sufficient control" over the cause of action to comply with the "take care" clause of Article II, § 3. As a result, the assignment in the statute is unconstitutional, and thus, Relator lacks standing to assert a false-marking cause of action.

## Section 292 Violates the "Take Care" Clause of Article II, § 3 of the U.S. Constitution

The President's "most important constitutional duty" is to " 'take Care that the Laws be faithfully executed.' " *Lujan*, 504 U.S. at 571-77 (quoting U.S. Const, art. II, § 3). That duty includes the responsibility to institute litigation as the "ultimate remedy for a breach of the law." *Buckley v. Valeo*, 424 U.S. 1, 138 (1976). Congress impermissibly encroaches on the Executive Branch's law enforcement function by transferring it to third parties beyond the control of the Executive Branch. *See Printz v. United States*, 521 U.S. 898, 923 (1997) (striking down federal statute assigning to state law enforcement officials the duty of enforcing federal law in part because the Executive Branch "unity would be shattered, and the power of the President would be subject to reduction, if Congress could act as effectively without the President as with him, by simply requiring state officers to execute its laws"); *see also CFTC v. Schor*, 478 U.S. 833, 856 (1986) (separation of powers violated when Congress "impermissibly undermine[s]" the powers of the Executive Branch); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977) ("prevent[ing] the Executive Branch from accomplishing its constitutionally assigned functions" violates the separation of powers).

Thus, Congress may only constitutionally assign the Executive Branch's law enforcement authority to third parties when the statutory assignment also grants the Executive Branch "sufficient control over the [third party] to ensure that the President is able to perform his constitutionally assigned duties" under the Take Care Clause.  *See Morrison v. Olson*, 487 U.S. 654, 696 (1988) (upholding independent counsel statute based on adequacy of control mechanisms, including unreviewable discretion whether to appoint independent counsel, to define jurisdiction of independent counsel, and power to remove independent counsel for good cause).  The *Morrison* standard governs a governmental assignment of authority whether the statute is civil or criminal in nature.  *See Nader v. Saxbe*, 497 F.2d 676, 679 n.19 (D.C. Cir. 1974) ("The Executive's constitutional duty to 'take Care that the Laws be faithfully executed,' Art. II, § 3, applies to all laws, not merely to criminal statutes."); *see also Lujan*, 504 U.S. at 577 (application of Article III standing requirements to civil enforcement and administration of the Endangered Species Act protects the President's "most important constitutional duty," that is, to "'take Care that the Laws be faithfully executed.' Art. II, § 3.").

As mentioned above, § 292 does not have any provisions that endow the Executive Branch with control over the enforcement of a false-marking action.  *See* 35 U.S.C. § 292(b).  A brief comparison to the FCA confirms that § 292(b) does not vest the Executive Branch with "sufficient control" over false marking litigation, in direct violation of the *Morrison* standard. The FCA has numerous specific provisions granting the Executive Branch "sufficient control" over an FCA *qui tam* action, including: (1) the right to be notified of the case before the defendant is served, 31 U.S.C § 3730(b)(2); (2) the right to intervene in the action as a matter of right within sixty days of the commencement of the action, *id.*, or for "good cause" thereafter, 31 U.S.C. § 3730(c)(3); (3) the obligation to take primary responsibility for prosecuting the action if

it intervenes and the right to not be bound by the relator's actions, 31 U.S.C. § 3730(c)(1); (4) the right to seek dismissal or settlement of the action over the objection of the relator, 31 U.S.C. § 3730(c)(2)(A), (B), as well as the right to prevent dismissal of the action by the relator, 31 U.S.C. § 3730(b)(1); (5) the right to limit the relator's discovery, 31 U.S.C. § 3730(c)(4), and participation in the suit, 31 U.S.C. § 3730(c)(2)(C); and (6) the right to be served with all papers even if it chooses not to intervene, 31 U.S.C. § 3730(c)(3).

These various mechanisms of control are vital to the constitutionality of the FCA.  *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 757 (5th Cir. 2001) ("Any intrusion by the *qui tam* relator in the Executive's Article II power is comparatively modest, especially given the control mechanisms inherent in the FCA to mitigate such an intrusion and the civil context in which qui tam suits are pursued.").  Because § 292 lacks any mechanism by which the Executive Branch may maintain "sufficient control" over a false marking lawsuit, the statute fails to meet the *Morrison* standard, and thus, violates the Take Care Clause.

Consequentially, § 292 represents an attempt by Congress to improperly assign a function of the Executive Branch, and thus, the assignment is unconstitutional and void.  *See Free Enterprise Fund v. Public Accounting Oversight Board*, 130 S. Ct. 3138, 3162 (2010).  As such, Relator may not rely on either the *qui tam* cause of action or the government's assignment under § 292 to establish standing.  Therefore, the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

## Relator Has Also Failed to Demonstrate a Private Basis for Standing

The *Stauffer* court also expressly reserved the issue of whether, independently of § 292's assignment of a governmental right of action to "any person," a relator could establish a private basis for standing.  *See Stauffer*, 2010 WL 3397419 at *6.  Even if a theoretical relator could

establish a private basis for standing, in this case, Relator's pleaded bases for standing fail to pass constitutional requirements.

Relator's Amended Complaint attempts to identify two separate bases for standing, both of which are indefinite, entirely speculative, and require the Court to assume or invent a causal relationship where none exists. Ultimately, the Amended Complaint has not demonstrated how Summit's alleged false marking has specifically injured Relator in a manner that is "concrete and particularized" or "actual or imminent."

The Amended Complaint asserts two alleged bases for constitutional standing: (1) Relator, as a member of the public, has suffered "deleterious economic effects" as a result of inhibited competition and (2) Relator individually suffered economic harm because it purchased Summit's products at "artificially inflated prices." Initially, any brief reflection on these two "separate" bases for standing reveals that they are actually one alleged injury. Relator is claiming that it is economically harmed because of the presumed adverse anti-competitive economic effects caused by Summit's alleged false marking.

Courts have repeatedly rejected the notion that alleged anti-competitive behavior is sufficient to support standing to anyone conceivably impacted by the alleged conduct. *See e.g.*, *Little v. KPMG LLP*, 575 F.3d 533, 540-41 (5th Cir. 2009) (rejecting standing on competitors claim of lost business based on a public-accounting firm's alleged fraudulent procurement of licenses); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 563 (5th Cir. 2001) ("[T]he attenuated claimed harm is alleged to come from the fact that an increase in sales of Amway products eventually will lead to lower sales for its competitor. If standing is allowed here, one could argue that any competitor's fraudulent act in running its business that gives it an advantage could be sued upon as a violation of the Lanham Act. Opening up standing to this extent would

not be prudent."); *McDermott v. New York Metro LLC*, 664 F. Supp. 2d 294, 299-300 (S.D.N.Y. 2009) (rejecting standing on the basis that alleged unfair marketing practices drove competitor out of a local real estate market).

In order to accept Relator's basis for standing, the Court must assume that Summit's alleged conduct deterred competition, that the deterrence was significant enough to bar competitors from entering the market, and that the entry of additional competitors into the market would have had a downward effect on prices. Given the multiple layers of assumption and supposition, Relator's implied logical chain arriving at the alleged injury-in-fact is too speculative to support standing. *See Little*, 575 F.3d at 541 ("The competitors' claim of injury depends on several layers of decisions by third parties-at minimum, KPMG's Texas clients-and is too speculative to confer Article III standing."). In addition, by its very nature, an injury suffered by the public at large is general, imperceptible, and cannot serve as the basis for constitutional standing. *See Lujan*, 504 U.S. at 565 (requiring plaintiff to establish an injured interest that was "perceptibly affected by the unlawful action in question").

Because Relator's Amended Complaint additionally fails to identify a concrete and particularized injury that is causally connected to the complained-of conduct, Relator lacks standing to bring a suit under § 292 and the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Relator's Amended Complaint for False Marking should be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

/s/ Matt Acosta
Robert P. Latham
Texas State Bar No. 11975500
Matt Acosta
Texas State Bar No. 24062577
**JACKSON WALKER L.L.P.**
901 Main Street, Suite 6000
Dallas, Texas  75202
(214) 953-6109
(214) 953-5822 - Fax
Email: blatham@jw.com
Email: macosta@jw.com

**ATTORNEYS FOR DEFENDANT
SUMMIT CHEMICAL COMPANY.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 15th day of September, 2010.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/ Matt Acosta
Matt Acosta